Filed 7/24/23  P. v. Chavez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GUSTAVO CHAVEZ,<br><br>    Defendant and Appellant. | F084173<br><br>(Kern Super. Ct. No. BF187301A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant and appellant Gustavo Chavez was convicted by a jury of two counts of making criminal threats, one count of criminal threats against a public official, one count of forcibly resisting a peace officer, and one count of delaying a peace officer. The jury also found true that defendant had suffered a prior conviction ("the 1998 strike") which constituted a "strike" for purposes of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).[1] After the verdict, the trial court denied a "*Romero* motion"[2] to dismiss the 1998 strike and sentenced defendant to a total term of 14 years eight months imprisonment. On appeal, defendant contends that: (1) the trial court erred by not granting his *Romero* motion; (2) the trial court erred by not sentencing him to a lower term sentence pursuant to section 1170, subdivision (b)(6)(A); and (3) alternatively, he received ineffective assistance of counsel when defense counsel failed to argue for a lower term sentence pursuant to section 1170, subdivision (b)(6)(A). We affirm.

## PROCEDURAL BACKGROUND

On February 16, 2022, the Kern County District Attorney filed an amended information[3] charging defendant with two counts of making threats to commit a crime which would result in death or great bodily injury (§ 422; counts 1 & 6); threatening the life of, or serious bodily injury to, a public official (§ 76, subd. (a)(1); count 2); assault with a deadly weapon against a peace officer (§ 245, subd. (c); count 3); resisting a peace officer by threats or violence (§ 69; count 4); and misdemeanor delaying, resisting, or obstructing a peace officer (§ 148, subd. (a)(1); count 5). The amended information

---

[1] All further statutory references are to the Penal Code except as otherwise noted.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). "A *Romero* 'motion' is in fact a *request* that the court exercise its authority under section 1385 to strike a prior felony conviction." (*People v. Lee* (2008) 161 Cal.App.4th 124, 126, fn. 2 (*Lee*).)

[3] The amendments to the information were made by interlineation. Resultingly, the amended information is styled simply as an "information." We nevertheless refer to it as an "amended information."

2.

further alleged as to counts 1, 2, 3, 4, and 6 that defendant had suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), which also qualified as a prior serious felony conviction (§ 667, subd. (a)).  As to counts 3 and 4, the amended information also alleged defendant personally used a deadly weapon, a machete (§ 12022, subd. (b)(1)).  Prior to trial, the trial court granted a motion by the People to dismiss count 3.

On October 22, 2021, the trial court conducted a competency hearing pursuant to section 1368 and found defendant competent to stand trial.[4]

A jury trial began on February 14, 2022, and concluded on February 28, 2022. The jury found defendant guilty on all counts and found true that defendant personally used a deadly weapon in committing count 4.  The jury also found the following aggravating factors:  the crime involved great bodily injury, the defendant was armed with or used a weapon, and the defendant engaged in conduct that indicates a serious danger to society.

On March 1, 2022, as part of a bifurcated proceeding, the jury found true that defendant was convicted of the 1998 strike.

On March 15, 2022, defense counsel filed a sentencing memorandum in which he made a *Romero* motion.

On April 6, 2022 (after having heard arguments on March 29, 2022), the trial court denied defendant's *Romero* motion and imposed a sentence.  The court sentenced defendant to an aggregate term of 14 years and eight months of incarceration as follows: as to count 4, six years (the upper term of three years doubled due to the prior strike conviction), plus a one-year weapon enhancement and a five-year serious felony conviction enhancement; as to count 1, 16 months to be served consecutively with the term on count 4; as to count 2, 16 months, stayed pursuant to section 654; as to count 6,

_____

[4] This hearing was conducted by Judge Michael Bush.

3.

16 months to be served consecutively with the terms on counts 1 and 4; and as to count 5, 180 days to be served concurrently with the terms on counts 1, 4, and 6.

**FACTUAL BACKGROUND**

**The Offenses**

Defendant was monitored on supervised release by probation officer Teresa Dickey. About four months after successfully completing supervised release in February 2021, defendant sent Dickey over 5,000 text messages from June 2021 to August 2021. The text messages included what Dickey described as bizarre or extreme religious statements, statements regarding killing or harming law enforcement officers, and threats about cutting the heads off law enforcement officers, a park ranger, and a Kern County Superior Court judge. Although Dickey believed that some of the texts may have been an attempt at "suicide by cop" and some type of cry for help, she reported the threats against others up her chain of command and to the police.

On September 13, 2021, Bakersfield police officers apprehended defendant. Defendant was working with a machete while performing his job as a tree trimmer when officers found him. As officers approached, defendant kept the machete in his hand and refused commands by the officers to stop and drop the machete. Defendant began walking towards the officers and said the officers would have to shoot him. As defendant began to run or jog with the machete in hand, an officer shot defendant with a Taser device in the back. The Taser dropped defendant to the ground, and defendant then complied with commands to relinquish the machete. Officers were then able to take defendant into custody.

**Mental Health**

In connection with the October 2021 competency hearing, the trial court reviewed the report of psychologist Dr. Matthews, who had been appointed to assess defendant. In part, Dr. Matthews concluded that: defendant believed that God makes statements through him; defendant is one of 144,000 individuals that God has placed on earth to

serve God and prevent war; defendant denied having a mental illness; defendant does have a mental disorder; defendant's condition was serious and uncontrolled and could result in serious harm to himself; defendant was a severe threat and/or danger to others; defendant was unpredictable and not behaviorally controlled; and defendant required psychiatric treatment and evaluation. Dr. Matthews did not identify a specific mental disorder or make a formal diagnosis.

On February 17, 2022, as part of an Evidence Code section 402 hearing, the trial court heard testimony from Dickey. In relevant part, Dickey testified that she supervised defendant twice while he was on supervised release. Dickey explained that her interactions with defendant varied significantly depending on whether he was taking medication. When defendant was taking his medication, he did very well; when he was not taking medication, he acted agitated and angry and would often speak about God and religion. Dickey also testified that a Department of Corrections document stated that defendant had schizophrenia.

On February 24, 2022, defendant testified before the jury. Defendant's testimony had aspects of the following: defendant is a Jehovah's Witness; he serves and was appointed by God; he is a member of the celestial 144,000 family; he is part of the body of Christ; he is dead in the flesh but lives in the spirit of God; he is dead to and freed from the law, including man's law; he delivers messages from God and God speaks through him; he is at war spiritually; he does not back down; he does what God wants him to do; and God will do and accomplish whatever God chooses to do. Variations on these and other beliefs/tenants peppered the entirety of defendant's trial testimony. With respect to the charges against him, defendant testified that he did not threaten anyone through text messages, rather, he was following God's instructions to send the messages. Defendant also explained that he did not put the machete down when ordered because he did not know if the people confronting him were really the police. Defendant testified

5.

that although he was walking with the machete towards one of the police officers, he was only trying to get out of the situation and did not intend to hurt anyone.

Finally, during the March 1, 2022, bifurcated proceeding, the trial court noted that defendant had been polite and worked well within the court system, and that, even though defendant's testimony included statements that might be considered bizarre or outside the norm, defendant believed the statements and they were part of his defense. Based on its observations, the trial court found no substantial evidence of incompetency and no basis to question the prior determination of competency.

<b><u>DISCUSSION</u></b>

**I.       Romero Motion**

**A.       *Parties' Arguments***

Defendant contends that the trial court abused its discretion when it denied his *Romero* motion and refused to dismiss the 1998 strike. Defendant argues that the 1998 strike occurred 23 years before the offenses of this case and it was his only serious felony conviction. In that 23-year period, defendant argues that he successfully completed periods of probation and post-release supervision, and his intervening offenses were not serious or violent crimes. Defendant emphasizes that he has a serious mental illness, as reflected by the testimony of Dickey, the report of Dr. Matthews, a period of incompetency during a 2019 criminal trial, and defendant's own trial testimony. Further, if the 1998 strike had been dismissed, defendant avers that the sentence imposed would still have been substantial at 10 years four months. Finally, defendant notes that the current offenses did not involve any physical contact or injuries, and he did not actually act on any of his threats. Defendant argues that the collective force of this evidence demonstrates that he is outside the spirit of the Three Strikes law.

The People respond that the trial court properly denied defendant's motion to dismiss. The People argue that the court considered defendant's extensive criminal history, the circumstances of the offenses, and the defendant's background. The People

6.

argue that after weighing these factors, the court did not abuse its discretion and correctly found that maintaining the 1998 strike was in conformity with the law.

We agree with the People.

### B. *Additional Information*

In denying the *Romero* motion, the trial court accepted defendant's statement in the probation report that he does not suffer "disabilities related to his mental health," and commented on defendant's statements and actions in relation to defendant's religious views. In part, the court accepted defendant's right to hold religious beliefs and, in effect, to be a zealot so long as his actions did not cross criminal laws. The court then explained that it had specifically considered "the current charges against the defendant, the defendant's criminal record, the defendant's background, character, and here the prospects in the interest of justice [*sic*],"; that is, the court took into account "the totality of this person in front of me here." With those considerations, the court found that defendant was not outside the spirit of the Three Strikes law.

### C. *Legal Standard*

Pursuant to section 1385, subdivision (a), "in furtherance of justice," a court has authority "to strike prior felony conviction allegations in cases brought under the Three Strikes law." (*Romero*, *supra*, 13 Cal.4th at pp. 529–530 [discussing § 1385, subd. (a)].) However, because the Three Strikes law was designed to limit a court's discretion in sentencing repeat offenders by establishing sentencing standards for every defendant with at least one strike, the standards that a sentencing court must follow to strike a prior felony are "stringent." (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) A sentencing court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v.*

7.

*Williams* (1998) 17 Cal.4th 148, 161 (*Williams*); see also *People v. Johnson* (2015) 61 Cal.4th 674, 689.)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 375.)  A trial court abuses its discretion if it acts so irrationally or arbitrarily that no reasonable person could agree with its refusal to dismiss the prior conviction.  (*Id.* at pp. 376–377; *People v. Oneal* (2021) 64 Cal.App.5th 581, 588; see also *Lee*, *supra*, 161 Cal.App.4th at p. 132.)  "[T]he circumstances where no reasonable person could disagree that the criminal falls outside the spirit of the [T]hree [S]trikes scheme" must be extraordinary.  (*Carmony*, at p. 378.)  An appellate tribunal may not merely substitute its judgment for the trial court's judgment, and there is no abuse of discretion simply because reasonable people might disagree.  (*People v. McDowell* (2012) 54 Cal.4th 395, 429–430; *Carmony*, at p. 377.)  Moreover, there is a "strong presumption that any sentence that conforms to the [norms of the Three Strikes law] is both rational and proper."  (*Carmony*, at p. 378; see also *Lee*, at pp. 131–132.)  "Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of [the Three Strikes] law," the trial court's ruling will be affirmed even if the appellate tribunal would have ruled differently in the first instance.  (*Carmony*, at p. 378.)

**D.**     *Analysis*

The record reflects that the trial court gave careful consideration to defendant's *Romero* motion, and none of the factors expressly identified by the trial court were improper.  (See *Williams*, *supra*, 17 Cal.4th at p. 161.)  As such, the trial court's denial of the *Romero* motion enjoys a strong presumption of reasonableness and propriety.  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  Defendant has not overcome this presumption.

The People are correct that the record reveals that defendant has a substantial criminal history. Between the 1998 strike and the current offenses, defendant was convicted of crimes on seven occasions.[5] He was convicted of 10 offenses, including three felonies, one of which involved violent behavior. On these convictions, he served four prison terms. The result of these convictions is that defendant has spent most of the 23-year gap between the 1998 strike and the current offenses either in prison or on some form of probation or supervised release. That is, defendant continued to commit crimes and required governmental monitoring consistently during the 23 years. This vitiates any effect from "staleness" that my otherwise be present from the 23-year gap in time. (*People v. Salazar* (2022) 80 Cal.App.5th 453, 461 [explaining that large gap between prior strikes and current offenses are insufficient to dismiss a strike where the defendant continues to lead a life of crime]; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [same]; see also *People v. Vasquez* (2021) 72 Cal.App.5th 374, 390.)

Moreover, the current offenses involved multiple death threats of decapitation against a public official, a park ranger, and law enforcement in general, as well as resisting law enforcement with a machete. It is true that no victim or police officer was physically injured, but as recognized by the trial court, the park ranger and the judge experienced fear and altered how they worked or lived their lives because of defendant's

---

[5] In addition to the 1998 strike, the following criminal history has been identified: (1) driving without a license (Veh. Code, § 12500) on June 11, 2007; (2) domestic violence (§ 243, subd. (e)(1)) on April 28, 2008; (3) attempted transportation, sale, or distribution of a controlled substance (§ 664; Health and Saf. Code, § 11379, subd. (a)) on May 13, 2009; (4) driving under the influence (Veh. Code § 23152, subd. (b)) on July 19, 2012; (5) planting, harvesting, or processing cannabis (Health and Saf. Code, § 11358) on January 26, 2015; (6) taking a vehicle without consent (Veh. Code, § 10851, subd. (a)), driving under the influence (Veh. Code, § 23152, subd. (e)), and failing to stop a vehicle after causing property damage (Veh. Code, § 20002), all on September 2, 2016; and (7) delaying, resisting, or obstructing a peace officer (§ 148, subd. (a)(1)) and assault by force likely to produce great bodily injury (§ 245, subd. (a)(4)), both on January 18, 2019.

threats against them. Further, it should go without saying that approaching law enforcement with a machete while disobeying commands to drop the weapon, and yelling that the police will have to shoot, is extremely dangerous. The current offenses are violent, serious, and represent both a continuation and escalation of continuous criminal conduct by defendant.

Defendant emphasizes that there is strong evidence of mental health issues which supported his *Romero* motion. The evidence regarding defendant's mental health condition consists of the opinions of Dickey during an Evidence Code section 402 hearing, aspects of Dr. Matthews's competency report, concerns voiced by defendant's prior counsel, a brief period in 2019 in which defendant was declared incompetent to stand trial, and defendant's trial testimony. With respect to Dickey, she explained that defendant's behavior was different on medication and that the Department of Corrections had diagnosed him as schizophrenic. However, the effect of Dickey's testimony is lessened somewhat in that she admitted that she was not qualified to render any diagnoses, she did not confirm the diagnosis of schizophrenia, she did not know defendant's medication, and a mental health clinic had evaluated defendant and determined that defendant did not need its services.[6] With respect to the opinions of counsel and his prior incompetency, the incompetency lasted from February 5, 2019, to May 15, 2019, and defendant was never again declared incompetent despite a professional evaluation by Dr. Matthews and the observations of the court. In fact, the court commented positively on defendant's behavior during proceedings and found no substantial basis to question defendant's competency. Finally, while portions of Dr. Matthews's report are clearly concerning and indicate that mental health problems

---

[6] Dickey testified that the way the clinic usually works when it comes to a probation referral is that if the client does not want services, the clinic cannot force the client to take services. However, Dickey did not explain that defendant's case was the "usual case," nor did she explain the basis for the clinic's determination in defendant's particular case.

exist, they also state that defendant is unpredictable and poses a danger to others. Although we accept defendant's contention that the record indicates that he has mental health problems, we cannot conclude that his problems are so extensive and severe as to clearly overcome his current offenses and criminal history.

Defendant also contends that the trial court erred by accepting his own statement to the probation officer that he does not have a "disability related to his mental health." It is unclear what the court meant by "disability." "Disability" is not necessarily the same as "condition" or "diagnosis" or "illness," and it is not clear that the court refused to consider defendant's mental health as part of his unique circumstances. In fact, the court expressly considered defendant as a whole, including his background and character. The court also appeared to agree with defense counsel early in the trial that, although defendant was found competent, he had some mental issues. Also, while the court accepted defendant's statement to the probation officer regarding mental *disability*, the court did not expressly comment on the probation report's identification of defendant's physical or mental health *condition* as a mitigating factor.[7] Therefore, we cannot say that the court made a finding that no mental health issues existed or that it did not consider any mental health issues in assessing the *Romero* motion.

In sum, this is not such an extraordinary case in which *all* reasonable minds would agree that defendant is outside the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378; *People v. Oneal*, *supra*, 64 Cal.App.5th at p. 588; *Lee*, *supra*, 161 Cal.App.4th at pp. 131–132.) Therefore, we hold that the trial court did not abuse its discretion by denying defendant's *Romero* motion.

---

[7] We note that, while imposing the sentence, the trial court did state that it had considered mitigating factors but did not identify a particular factor.

## II. Failure to Sentence to Lower Term Under Section 1170

### A. *Parties' Arguments*

Defendant argues that the trial court imposed an upper limit sentence without considering or discussing section 1170, subdivision (b)(6)(A). This statute was in effect at the time of sentencing and presumptively required the imposition of a lower term sentence if psychological trauma was a contributing factor to the crime. Defendant argues that there was ample evidence that mental illness contributed to the offenses.

The People respond inter alia that defendant has forfeited this claim. The People argue that defense counsel did not invoke or attempt to apply section 1170, subdivision (b)(6)(A), during sentencing.

We agree with the People.

### B. *Legal Standard*

"In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing." (*People v. Scott* (1994) 9 Cal.4th 331, 351 (*Scott*); *People v. Cardenas* (2020) 53 Cal.App.5th 102, 125.) Thus, the failure to make a timely and meaningful objection regarding certain sentencing issues will forfeit or waive those issues on appeal. (*People v. Palmer* (2013) 58 Cal.4th 110, 116; *Scott*, at p. 351.) "In essence, claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*Scott*, at p. 354; see also *People v. McCullough* (2013) 56 Cal.4th 589, 594.) Included in the forfeiture rule are " 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices.' " (*People v. Wall* (2017) 3 Cal.5th 1048, 1075; *Scott*, at p. 353.) However, even in the absence of an objection, courts may review inter alia "clear and correctible errors" that are "independent of any factual issues presented by the record," such as "unauthorized sentence[s]," i.e., sentences that are not legal under any circumstances. (*Scott*, at p. 354; see also *McCollough*, at p. 595.)

12.

### C. *Analysis*

Defendant's reply did not respond to the argument that defense counsel's failure to object or raise section 1170, subdivision (b)(6)(A), forfeited any errors related to that law. Instead, the reply focused on the possible application of section 1170, subdivision (b)(6)(A), to defendant and argued that, if forfeiture is found, then there was ineffective assistance of counsel. The failure to explain why forfeiture did not occur, coupled with a substantial argument based on the eventuality of a forfeiture finding, is an implicit concession that the section 1170 issue has been forfeited under *Scott*.

Moreover, the nature of a section 1170, subdivision (b)(6)(A), determination suggests that it is subject to the *Scott* forfeiture rule. In relevant part, section 1170 reads:

> "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:
>
> "(A) The person has experienced psychological, physical, or childhood trauma, including but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

As can be seen, this section entails a number of factual assessments and determinations that must be made or that are intertwined with a sentencing analysis. First, a trial court must determine if a defendant has experienced one of three kinds of "trauma." Second, if a listed trauma is found, a trial court must evaluate the trauma and the circumstances of the offense and then determine whether that trauma was a "contributing factor" to the commission of the offense. Third, if trauma is determined to be a contributing factor to the commission of the offense, the trial court is given the opportunity to identify and assess mitigating and aggravating circumstances and then weigh the two against each other. Fourth, once identified and weighed, the trial court then determines whether the aggravating circumstances so outweigh the mitigating circumstances that it is in the interest of justice to impose a higher term sentence. Thus,

factual determinations and assessments are inherent within section 1170, subdivision (b)(6)(A).

In this case, there are no clearly correctable errors that are independent of factual issues. To draw conclusions about any psychological trauma that defendant may have experienced or the psychological trauma's effect on the offenses, and to determine whether the aggravating factors sufficiently outweighed mitigating factors, we would have to engage in an identification and assessment of factual matters that are subject to reasonable dispute. Further, in relation to section 1170, subdivision (b)(6)(A), the trial court was authorized to impose an upper term sentence if any one of three circumstances existed: (1) there was no trauma; (2) any trauma that might exist was not a contributing factor to the commission of the offense; or (3) the aggravating factors sufficiently outweighed mitigating factors. Because it was possible to sentence defendant to the upper term, the court's upper term sentence was not an "unauthorized sentence" for purposes of *Scott*. (*Scott*, *supra*, 9 Cal.4th at p. 354.) Therefore, defendant's argument relates to a sentence that was, at best, imposed in "a procedurally or factually flawed manner." (*Ibid.*)

Given the nature of a section 1170, subdivision (b)(6)(A) determination, as well as defendant's failure to address forfeiture, the forfeiture rule in *Scott* applies. Pursuant to *Scott*, because defense counsel did not object to or raise the issue of section 1170, subdivision (b)(6)(A), we conclude that defendant has forfeited any error regarding application of that statute to this case. (*Scott*, *supra*, 9 Cal.4th at p. 354.)

## III.    Ineffective Assistance of Counsel

### A.    *Parties' Arguments*

Defendant argues inter alia that his defense counsel was ineffective by failing to argue in favor of a lower term sentence or object under section 1170, subdivision (b)(6)(A). Defendant argues that there was ample evidence of mental illness in the record and that defense counsel had argued during sentencing that the crimes

would not have occurred had he received sustained treatment for schizophrenia. Defendant argues that there were no negative consequences to raising section 1170 or objecting to the imposition of the upper term sentence, particularly because there would be no forfeiture. Had defense counsel successfully raised the issue, defendant argues that he would have received a lower sentence on count 4 and there was no reasonable tactical basis to not object.

The People respond that the record does not show ineffective assistance of counsel. The People argue inter alia that while there is evidence regarding defendant's mental health, the record does not show that the defendant suffered from any psychological trauma from his mental conditions. Because the record is silent, the People argue that it must be presumed that defense counsel exercised his professional judgment to conclude that there was no psychological trauma and that section 1170 subdivision (b)(6)(A) did not apply.

We agree with the People.

**B.** *Legal Standard*

The Sixth Amendment guarantees the " 'right to the effective assistance of counsel.' " (*Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*).) "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." (*Buck v. Davis* (2017) 580 U.S. 100, 118; see also *People v. Johnsen* (2021) 10 Cal.5th 1116, 1165 (*Johnsen*).) A deficient performance is one in which counsel fell below an objective standard of reasonableness under prevailing professional norms. (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.) There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (*Woods v. Donald* (2015) 575 U.S 312, 315; *People v. Stanley* (2006) 39 Cal.4th 913, 954.) That is, there is a presumption that counsel made all significant decisions in the exercise of reasonable professional judgment. (*Cullen v. Pinholster* (2011) 563 U.S. 170,

196 (*Cullen*); *Strickland*, at p. 690; *People v. Padilla* (1995) 11 Cal.4th 891, 935.) Courts will defer to counsel's reasonable tactical decisions. (*Arredondo*, at p. 711; see also *Cullen*, at p. 195.) Prejudice occurs where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to the defendant. (*Strickland*, at p. 694; *Stanley*, at p. 954.) In turn, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. (*Strickland*, at p. 694; *Stanley*, at p. 954.)

Ineffective assistance of counsel claims should generally be pursued through habeas corpus proceedings. (*People v. Mai* (2013) 57 Cal.4th 986, 1009; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–268.) This is because on direct appeal, a court may find deficient performance only if: (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. (*Johnsen*, *supra*, 10 Cal.5th at p. 1165; *Mai*, at p. 1009.) If counsel's tactics or strategic reasons for challenged decisions do not appear on the record, courts will not find ineffective assistance of counsel unless there could be no conceivable reason for counsel's acts or omissions. (*Johnsen*, at p. 1165). Given this framework, "[r]arely is ineffective assistance of counsel established on [direct] appeal since the record usually sheds no light on counsel's reasons for action or inaction." (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.)

### C. *Analysis*

There is no dispute that defense counsel failed to raise section 1170, subdivision (b)(6)(A). However, there is also no dispute that defense counsel's rationale for these omissions does not appear in the record. Therefore, we will not find a deficient performance unless there is no conceivable reason for defense counsel's omissions. (*Johnsen*, *supra*, 10 Cal.5th at p. 1165.)

16.

Recently, this court recognized that the list of three trauma sources in section 1170, subdivision (b)(6)(A), was not an exclusive list. (*People v. Banner* (2022) 77 Cal.App.5th 226, 241 (*Banner*).) *Banner* held that psychological trauma based on, stemming from, or attendant to a mental illness may satisfy section 1170, subdivision (b)(6)(A)'s requirements. (*Banner*, at pp. 240–241.) However, *Banner* also expressly held that the existence of a mental illness alone would not suffice. (*Id.* at p. 241)

In this case, there is only clear evidence of a mental illness. The record contains evidence suggesting that the defendant suffered from schizophrenia, but it does not disclose the nature or extent of the schizophrenia. Moreover, defendant cites no part of the record that shows he has suffered from psychological trauma, nor has he shown that psychological trauma is an expected or typical characteristic of his particular form of schizophrenia. Based on the plain language of section 1170, subdivision (b)(6)(A), the defendant must have experienced psychological trauma, and that trauma must be a contributing factor to the offense. (§ 1170, subd. (b)(6)(A); *Banner*, *supra*, 77 Cal.App.5th at p. 241.) Because trauma, not simply the existence of a mental illness, is the key for section 1170, subdivision (b)(6)(A), (*Banner*, at p. 241), counsel's recognition that defendant had a mental illness for purposes of the *Romero* motion does not, per se, mean that defense counsel should have, or even could have, based a section 1170, subdivision (b)(6)(A) argument on the mental illness. A mental illness/disorder is not synonymous with, or the equivalent of, psychological trauma. (*Banner*, at p. 241.) If defense counsel did not believe that there was psychological trauma from defendant's mental illness, then defense counsel would not be obligated to make arguments regarding section 1170, subdivision (b)(6)(A). (See *People v. Bell* (2019) 7 Cal.5th 70, 126 ["A decision not to pursue futile or frivolous motions does not make an attorney ineffective"]; *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"].) In the face of a silent

record, we conclude that it is reasonably conceivable that defense counsel believed that defendant did not have psychological trauma from defendant's particular form of schizophrenia. Because this is a conceivable explanation for defense counsel's omission, defendant has failed to show deficient performance. (*Johnsen*, *supra*, 10 Cal.5th at p. 1165.)

Defendant contends that defense counsel could have been ignorant of section 1170, subdivision (b)(6)(A)'s existence or effective date since it had only gone into effect on January 1, 2022. We agree that ignorance of the law does not constitute any form of tactical decision. (*Smith v. Lewis* (1975) 13 Cal.3d 349, 359; see also *People v. Pope* (1979) 23 Cal.3d 412, 425–426 ["[W]here the record shows that counsel has failed to research the law or investigate the facts in the manner of a diligent and conscientious advocate, the conviction should be reversed since the defendant has been deprived of adequate assistance of counsel"].) Further, section 1170, subdivision (b)(6)(A), had been in effect for about three months at the time of defendant's sentence, which is a relatively short period. Nevertheless, there is no indication that defense counsel was unaware of section 1170, subdivision (b)(6)(A), and defendant cites no authority that requires us to so presume. To the contrary, we presume that there are reasonable explanations for counsel's actions, (*Cullen*, *supra*, 563 U.S. at p. 196; *Strickland, supra*, 466 U.S. at p. 690; *People v. Padilla*, *supra*, 11 Cal.4th at p. 935), which is inconsistent with assuming ignorance. (*People v. Ledesma* (2006) 39 Cal.4th 641, 747 ["The record does not reveal the extent of the research conducted by defense counsel on the subjects of these motions, and we cannot draw the conclusion that counsel failed to research the law adequately"].) Therefore, in the face of a silent record, we will not presume that defense counsel was unaware of section 1170, subdivision (b)(6)(A). (*Ledesma*, at p. 747.)

Establishing ineffective assistance of counsel on direct appeal is a notoriously difficult task. (*People v. Woodruff*, *supra*, 5 Cal.5th at p. 736.) The presumptions in

favor of competent representation, coupled with a reasonably conceivable reason for defense counsel's omission, ultimately defeat defendant's efforts to show deficient performance. (*Cullen*, *supra*, 563 U.S. at p. 196; *Johnsen*, *supra*, 10 Cal.5th at p. 1165.) Therefore, defendant has failed to demonstrate a violation of the Sixth Amendment right to counsel.

## **DISPOSITION**

The judgment is affirmed.


                                                    POOCHIGIAN, Acting P. J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.